Louis A. Rafti, Plaintiff in pro se
Wheeler Street
Woodstock, IL 60098
Tel: 815.307.6326
eMail: lou.raftiman@gmail.com

RECEIVED

SEP 03 2024

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
### Northern District of ILLINOIS

| | | |
|---|---|---|
| Louis A Rafti | ) | Case No. 24-cv-50365 |
| Plaintiff | ) | **Complaint for Violations of ADA** |
| v. | ) | **Disability Discrimination** and |
| Rosecrance Behavioral Health, and | ) | **Retaliation in Employment** |
| Does 1-20 | ) | |
| Defendants, | ) | |

Plaintiff Louis A. Rafti, an individual, for his Complaint for Damages, against Defendant

Rosecrance Behavioral Health, an Illinois corporation, and DOES 1 through 20, inclusive,

alleges as follows.

## JURISDICTION AND VENUE

1. Plaintiff Louis A. Rafti for their Complaint for Damages, against Defendant

   Rosecrance Inc., and DOES 1 through 20, inclusive, allege as follows. This Court has

   subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§

   1331, 1343, and 1367.

2. The plaintiff brings this action to address the defendant's wrongful and illegal conduct associated with violations of the Americans with Disabilities Act (42 U.S.C. § 12101, et seq.) ("ADA"), among other claims for relief, arising under the Constitution and laws of the United States such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims for violations of Illinois state law concern the same actions and omissions that form the basis of Plaintiff's federal question claims such that they all are part of the same case or controversy. This Court, therefore, has supplemental jurisdiction over those Illinois state law claims pursuant to 28 U.S.C. § 1367.

3. This Court has subject matter jurisdiction over the claims alleged herein pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Plaintiff's claims for violations of the Americans with Disabilities Act (42 U.S.C. § 12101, et. seq.) ("ADA"), among other claims for relief, arise under the Constitution and laws of the United States such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Plaintiff's claims for violations of Illinois state law concern the same actions and omissions that form the basis of Plaintiff's federal question claims such that they all are part of the same case or controversy. This Court, therefore, has supplemental jurisdiction over those Illinois state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1 and 2). Defendant Rosecrance, Inc. has its main places of business in the Northern District of Illinois, and the events, acts, and omissions giving rise to Plaintiff's claims occurred in the Northern District of Illinois.

## **PARTIES**

5.  Plaintiff Louis A. Rafti, is a qualified individual, living with disability, in recovery from substance use disorder and mental illness, who applied to Rosecrance, Inc. for an employment position in which he has skills, experience, and expertise. At all times relevant to this action, the plaintiff was a qualified individual because he is/was regarded by the defendant to have a disability within the meaning of Title I of the ADA and he was qualified for the functional requirements of the position that he applied for

6.  Defendant Rosecrance, Inc., is an Illinois corporation, with its headquarters in Rockford, Illinois, that provides behavioral health care in Illinois and Wisconsin. Defendant Rosecrance Behavioral Healthcare is an entity covered by the ADA with more than fifteen ("15") employees. At all times relevant to this action, the defendant was a covered entity within the meaning of Title I of the ADA.

7.  denying employment to applicant Louis Rafti for a position which he was extraordinarily qualified for in violation of the Americans with Disabilities Act (42 U.S.C. § 12101, *et. seq.*) ("ADA"). In a letter responding to Plaintiffs' EEOC Complaint for discrimination in employment, Rosecrance, Inc., by and through their agents/Attorneys "Betam, Cheatam and Howe" Rosecrance slandered and liabled the Plaintiff and presented him in a false light by falsely claiming that their reason for not hiring Plaintiff resulted from alleged "lack of boundaries with clients" and giving them rides and letting them stay at his home."

### GENERAL ALLEGATIONS

8. On about January 2, 2023, Plaintiff applied to Rosecrance Behavioral Health for the position of Engagement Specialist 3rd Shift.

9. On about January 11, 2023, Rosecrance Human Resources manager, Tanner Saterlee sent me an email stating: "Thank you for your patience as we reviewed your experience with our Staff Education Department. Based on your designation determined based on the State's guidelines and your education, I believe we will be able to offer between $18-20/hr for the Engagement Specialist position. We have the full-time 3rd shift position now available so you would receive a $0.50/hr differential on top of this for each hour you work.

10. An online ZOOM interview was arranged for Plaintiff, with Tanner Saterlee, and Manager Maggie Bianchi that took place on January 18, 2023.

11. During the interview, I discussed that:• I had significant (6 yrs.) of experience in crisis intervention working with mentally ill, homeless persons, with substance or alcohol use disorder on Los Angeles Skid Row; That I had nearly 15 years of experience in crisis intervention working with persons with HIV / AIDS and the LGBTQ+ community, including outreach to HIV + Transgender prostitutes. I had served as a representative for the Los Angeles County Health Dept. HIV / AIDS Drug and Alcohol Task Force in Washington D.C. for purposes of communicating with appointed and elected representatives about funding; I had nearly seven years of experience in crisis prevention and intervention representing similarly situated mentally ill, homeless persons, with substance or alcohol use disorder persons at Public Interest Law organizations and was often responsible for similar clients of

other attorneys. Many of these cases involved important impact litigation, larger private law firms working with us pro bono, or City, County, or State Attorney's offices; I was very proud of my recent work as an Alcohol and Substance Use Disorder treatment navigator with New Directions Addiction Recovery Services NDARS), especially the positive outcomes for our clients. I was able to increase the number of persons assisted from an average of six per month to over thirty, developed a comprehensive network of Detox and treatment referral resources, and revised, improved, and expanded reporting.

12. During the interview, I also disclosed to Maggie Bianchi, as I had disclosed to Tanner Satterlee in phone conversations before the interview, that I am a person living with mental and physical disabilities, have a passion for assisting other persons similarly situated, and that filed an EEOC Complaint against my previous employer New Directions for associational disability discrimination and retaliation.

13. After I disclosed my disabilities and my previous employment, Maggie Bianchi concluded the interview, saying only that "we will get back to you."

14. For the next week, Tanner Saterlee did not return my phone calls or emails, except to send me an email on about January 20,. 2023, that stated they [Rosecrance] were still in the hiring process.

15. On about the last week of January or the first week of February 2023, Tanner Saterlee left me a voice mail saying that I was not selected for hiring, but did not say why.

16. I am informed and believe that Rosecrance hired a much less experienced and less qualified or experienced non-disabled person or persons for the position of Engagement Specialist 3rd Shift MCR that I applied for.

17. In the following months, I applied for several other positions at Rosecrance, however, I did not receive any response to these applications, or my follow-up phone calls to Tanner Saterlee.

18. I am informed and believe that Rosecrance subsequently hired much less qualified or experienced non-disabled person or persons for other position(s) that I applied for.

19. On August 3, 2023, I filed an EEOC charge of disability discrimination and retaliation under the ADA, Charge # 440-2023-08434. A copy of that Charge is attached here as EXHIBIT A and incorporated by reference.

20. On about December 1, 2023, Rosecrance filed a "Response to Charge # 440-2023-08434 with the EEOC. A copy of that Response is attached here as EXHIBIT B and incorporated by reference.

21. In their response to EEOC Complaint, Rosecrance Behavioral Healthcare, by and through their agents and attorneys, Beatam Cheatam and Howe stated that the reason that they declined to hire me was due to my "lack of boundaries" with clients at my previous job.

22. On December 16, 2023, I filed a "Rebuttal to Rosecrance Response to Charge #440-2023-08434. A copy of my rebuttal is attached here as EXHIBIT C and incorporated by reference.

23. Rosecrance's statement that "actions of Complainant were witnessed and reported to Ms. *Bianchi through the Rosecrance Mobile Crisis Team employees who work in conjunction* with the Rosecrance Engagement Specialists." (see Position Smt. Page 5) Is not only blatantly false, but it is also physically impossible for those persons - or, anyone - to have witnessed, considering that I worked remotely via phone and computer in all of my interactions with clients during my employment on my previous job.

24. Nor did I ever, as Rosecrance stated, "station myself in any Hospital ER lobby to recruit clients.", I worked and interacted with clients and Hospital ERs almost entirely via telephone.

25. Neither, did I, as Rosecrance stated, ever transport clients in my own vehicle, my previous employer had a transportation service - Kaisen - via which I submitted all requests for client transportation online. Clients were then transported via UBER to hospitals, rehabilitation programs, sober living, etc. Please note that I interacted extensively with Rosecrance staff over the phone when arranging transportation to one of their facilities, especially to their Mental Health Crisis Center where it was imperative to closely coordinate the arrival of clients in psychiatric crisis to make sure that they were met as the UBER arrived there.

26. I never allowed or invited clients to stay in my home, as Rosecrance falsely stated. I am proud to say that I always found homeless clients a placement.

27. On June, 3, 2024, the EEOC issued a "Determination of Charge" and "Notice of

   ...Right to Sue "letter." A copy of that letter is attached here as EXHIBIT D and

   incorporated by reference.

## FIRST CLAIM FOR RELIEF
## DISABILITY DISCRIMINATION
### Violation of Title I of the Americans with Disabilities Act (ADA)
### (42 U.S.C. § 12101, *et seq.*)

28. Plaintiff incorporateS by reference the allegations of paragraphs 1through 27 above, as if each

   such allegation was set forth in full herein

29. The ADA prohibits employment discrimination on the basis of disability. 42 U.S.C.S.

   § 12112(a). Like other employment discrimination statutes, the ADA also prohibits

   retaliating against employees for asserting their rights. 42 U.S.C.S. § 12203(a).Ford v.

   Marion Cty. Sheriff's Office, 942 F.3d 839, 844

   Americans with Disabilities Act of 1990 or ADA (42 U.S.C. § 12101 states in pertinent

part:

   "...that a "covered entity" shall not discriminate against "a qualified individual with a
   disability".[14] This applies to job application procedures, hiring, advancement and
   discharge of employees, job training, and other terms, conditions, and privileges of
   employment. "Covered entities" include employers with 15 or more employees, as well
   as employment agencies, labor organizations, and joint labor-management committees."

30. Under 42 U.S.C.S. § 12112(a), a plaintiff must establish that (1) he is disabled; (2) he

   is otherwise qualified to perform the essential functions of the job with or without

   reasonable accommodation; and (3) the adverse job action was caused by his

   disability. The ADA defines "disability" as: (1) a physical or mental impairment that

   substantially limits one or more major life activities, (2) a record of such an

impairment, or (3) being regarded as having such an impairment. Nawara v. Cty. of

Cook, 570 F. Supp. 3d 594, 595

31. Defendant Rosecrance Behavioral Healthcare is an entity covered by the ADA with

more than fifteen ("15") employees. At all times relevant to this action, the defendant

was a covered entity within the meaning of Title I of the ADA.

32. Plaintiff Louis A. Rafti is a qualified person living with disabilities,

including, but not limited to HIV/AIDS, and recovery from mental health and

substance use disorders. He applied for a job with Rosecrance, who refused to hire

him due to disability discrimination, although they offered a pre-textual and false

non-discriminatory explanation during the EEOC investigation. Plaintiff is very well

qualified for the position, is informed, and believes that Defendant Rosecrance hired a

far less qualified non-disabled person for the position.

33. At all times relevant to this action, the plaintiff was a qualified individual because he

is/was regarded by the defendant to have a disability within the meaning of Title I of

the ADA and he was qualified for the functional requirements of the position that he

applied for

34. Plaintiff applied for a job with Defendant that he was fully qualified for. Plaintiff is

informed and believes that the reason that Defendant did not hire him was because of

his disability.

35. Plaintiff is informed and, believes, and based thereon allege that defendant committed

the acts and omissions alleged herein with intent and/or reckless disregard of

plaintiff's substantial statutory and procedural rights. As a direct and proximate result

of the aforementioned acts, plaintiff has suffered and continues to suffer substantial

damages, including humiliation, hardship, anxiety, indignity, and severe mental and emotional anguish. Pursuant to 42 U.S.C. § 12133, plaintiff is entitled to recover compensatory damages

## SECOND CLAIM FOR RELIEF
## RETALIATION
### Violation of Title I of the Americans with Disabilities Act (ADA)
### (42 U.S.C. § 12101, *et seq*

36.  Plaintiff incorporates by reference the allegations of paragraphs 1through 35 above, as if each such allegation was set forth in full herein

37.  Additionally and in the alternative, the ADA prohibit employers from retaliating against employees who assert their statutory rights. 29 U.S.C.S. § 2615; 42 U.S.C.S. § 12203. Retaliation claims under the Americans with Disabilities Act, 42 U.S.C.S. § 12101 et seq., require three familiar elements: (1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee, and (3) the protected activity caused the adverse action. Freelain v. Vill. of Oak Park, 888 F.3d 895, 898

38.  Before applying for a position with Defendant, Plaintiff had recently filed a charge of disability discrimination against his former employer, New Directions, of which Defendant Rosecrance was made aware during the hiring process.

39.  Plaintiff is informed and believes that Defendant refused to hire him because of his filing of this complaint.

40.  Filing an EEOC complaint, or other disability-related complaint is a protected activity under the ADA.

## CONCLUSION

For the reasons here stated, Plaintiff Louis Rafti, respectfully requests the Court to find that Defendant, Rosecrance's denials of discrimination or retaliation are false, unsupported or pre-textual, and in consideration thereof, that Defendant Rosecrance discriminated and/or retaliated against Plaintiff in Violation of Title I of the Americans with Disabilities Act (ADA) (42 U.S.C. § 12101, *et seq*

## PRAYER

**WHEREFORE**, plaintiffs pray for relief and judgment as follows:

(1) For judgment in favor of Plaintiffs

(2) For actual damages of $62,400.

(3) For statutory and compensatory damages according to proof;

(4) For punitive damages according to proof;

(5) For such other and further relief as the Court deems just and proper.

Respectfully Submitted, September 3, 2024

/s/ Louis A. Rafti

Louis A. Rafti, Plaintiff in pro se





**LECHTENBERG**
**&ASSOCIATES LLC**
LAW FIRM

December 1, 2023

**VIA ELECTRONIC FILING:** https://nxg.eeoc.gov/rsp/login.jsf

U.S. Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn
Chicago, IL 60604

> *Re:* ***EMPLOYER'S POSITION STATEMENT***
> ***Louis Rafti (Complainant) and Rosecrance, Inc. (Employer/Respondent)***
> ***Charge No. 440-2023-08434***

Dear Sir/Madam:

As set forth by the Appearance Form already on file with your office, this firm represents Rosecrance, Inc. ("Rosecrance"), the Employer/Respondent in the above-referenced Charge of Discrimination. Please allow this correspondence to serve as the Employer/Respondent's timely-filed Position Statement.

As a preliminary note, the Employer categorically denies any unlawful discriminatory or retaliatory action against Complainant or any other individual. Rosecrance is committed to non-discrimination, equal opportunity and affirmative action in its workforce, and its actions throughout Complainant's employment demonstrated this commitment. Rosecrance also emphasizes and demands respectful behavior among all workers in the workplace, as demonstrated by its Code of Conduct.

Investigation continues in this matter, and Respondent may supplement or update this position statement and its exhibits at a later date with additional information or documents.

**Employer's Formal Response to the specific Allegations set forth in the Charge of Discrimination:**

1) **Allegation:** "I applied for the position of Engagement Specialist with Respondent in or around January 2023."
   a) **RESPONSE:** **Rosecrance admits it considered Complainant for the position of Engagement Specialist in or around January 2023. Rosecrance denies all remaining allegations set forth in this sentence.**
2) **Allegation:** "During my interview, I disclosed my disability and that I filed a charge of discrimination against my previous employer."
   a) **RESPONSE:** **Rosecrance denies this allegation.**

**2 | P a g e**
D e c e m b e r  1 ,  2 0 2 3

3) **Allegation:** "Subsequently, I was not selected for the position."
   a) **RESPONSE:** **Rosecrance admits it did not select Complainant for the position; Rosecrance denies the remaining allegations set forth in this sentence.**
4) **Allegation:** "I applied for additional positions with Respondent and have not been selected for an interview and/or employment."
   a) **RESPONSE:** **Rosecrance admits this allegation**.
5) **Allegation:** "I believe that I have been discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended."
   a) **RESPONSE:** **Rosecrance denies this allegation.**

**Company Information**

Originally founded in 1916 as an orphanage for a handful of boys, today Rosecrance is a private not-for-profit organization offering behavioral health services for children, adolescents, adults and families throughout the country. With more than 50 locations in Chicago and Northern Illinois, Wisconsin and Iowa, Rosecrance offers comprehensive addiction services for adolescents and adults, including prevention, intervention, detoxification, inpatient and outpatient treatment, experiential therapies, dual-diagnosis care and family education.

Rosecrance also offers high-quality, efficient and effective outpatient mental health services for children, adults and families through a variety of programs, among the various locations. Rosecrance serves more than 32,000 families each year.

**Background Information**

**Rosecrance Policies**

Rosecrance maintains an Employee Handbook and related policies about which all employees (including Complainant) are familiar. Attached for consideration are relevant pages from the Rosecrance Employee Handbook and other policies:

- **Exhibit A:** **Employee Handbook: please note the following relevant provisions:**
  - **Page 6:** **Equal Employment Opportunity**
  - **Page 38:** **Workforce Diversity**
  - **Page 38:** **Positive Working Environment**
  - **Page 38:** **Policy Against Harassment, Discrimination and Retaliation**
  - **Page 46:** **Corporate Compliance Program**
  - **Page 47:** **Code of Conduct**
  - **Page 48:** **Open Door Policy**

**The Rosecrance Hiring Process Involving Complainant**

Complainant has been applying for various positions with Rosecrance since approximately August, 2022. Attached as **Exhibit B** are Rosecrance's recruitment system notes relating to the employment application history of Complainant, in reverse chronological order. The following is a timeline of Complainant's multiple applications:

4875-8050-4212, v. 1

**3** | P a g e
D e c e m b e r   1 ,   2 0 2 3

- **Addiction Counselor** (Location: Rosecrance RGW Adolescent Campus, Rockford)
  - August 1, 2022:         Complainant applied for the position of "Addiction Counselor".
  - August 2, 2022:         Rosecrance determined that Complainant was not qualified for this role.
  - A copy of the Addiction Counselor job posting is attached hereto as **<u>Exhibit C</u>**.
  - Copies of the resumes of all applicants for this role are attached hereto as **<u>Group Exhibit D</u>**:
    - Candidate List (1 page) – 4 individuals
    - Hired:          ███████████████████████████
    - Declined:       ███████████████████████████
    - Declined:       ███████████████████████████
    - Declined:       Complainant – candidate detail (4 pages)
  - September 22, 2022:     Rosecrance hired ████████████ for the position, an ████████ candidate with a license in Social Work.  Complainant did not possess a license in Social Work.

- **Mental Health Clinician – Mobile Crisis Response (MCR) 1st Shift** (Location: McHenry, IL)
  - January 4, 2023:        Complainant applied for the Mental Health Clinician position. Tanner Satterlee (Talent Acquisition Specialist, disability status[1]:  unknown) invited Complainant to phone screen for the role to determine if he would qualify as a Mental Health Professional (MHP designation).  Complainant did not qualify so Ms. Satterlee discussed other opportunities with Complainant.
  - January 5, 2023:        Rosecrance determined that Complainant could be designated as a Rehabilitative Services Associate (RSA designation).  The designation of MHP or RSA is required for certain Rosecrance positions.  These designations are "DMH Clinical Designations", determined according to the Standard Operating Procedures (SOP).  A copy of the DMH Clinical Designation form is attached for reference as **<u>Exhibit E.</u>**
  - A copy of the Mental Health Clinician job posting is attached hereto as **<u>Exhibit F</u>**.
  - Copies of the resumes of all applicants for this role are attached hereto as **<u>Group Exhibit G</u>**:
    - List of Applicants – 15 applicants (7 considered after initial review[2]) – 1 page
    - Hired:███████████████████████████████████████
    - Initial Offer made to: ███████████████████████████████████
    - Not selected: ██████████████████████████████████
    - Not selected: ██████████████████████████
    - Not selected: ████████████████████████████
    - Not selected: ███████████████████████
    - Not selected: Complainant – candidate detail (2 pages)

- **Engagement Specialist 3rd Shift - MCR** (Location: McHenry, IL)

---

[1] Rosecrance invites employees to self-disclose disability status if they desire to do so.
[2] These seven are shaded on the list.

**4 | Page**
December 1, 2023

- o January 12, 2023: Tanner Satterlee moved Complainant to the open Engagement Specialist requisition and scheduled a Virtual Interview (VI) with Complainant for the role. The VI was scheduled to occur on January 16, 2023.
- o January 16, 2023: The IV was rescheduled for January 18, 2023.
- o January 18, 2023: Tanner Satterlee and Rosecrance employee Maggie Bianchi (Supervisor of the Crystal Lake Mobile Crisis Response Team in McHenry, IL ▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ conducted the IV with Complainant for the Engagement Specialist 3rd Shift position.
- o January 24, 2023: Rosecrance updated its system to reflect Complainant's application as "Hiring Mg Reviewed – Not Selected" after the IV showed deficiencies in Complainant's suitability for the position (namely, boundary issues, as explained below in further detail).
- o January 27, 2023: Complainant contacted Tanner Satterlee via phone to follow up on the role. Ms. Satterlee replied via email that Rosecrance was pursuing other candidates for the position. A copy of this email exchange between Ms. Satterlee and Complainant is attached hereto as **Exhibit H[3]**.
- o March 20, 2023: Rosecrance hired ▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆ for the role; however, ▆▆▆▆▆▆▆▆ did not start employment.
- o August 14, 2023: Rosecrance hired ▆▆▆▆▆▆▆▆▆▆▆▆ who qualified as a Mental Health Professional (MHP).
- o A copy of the job posting for Engagement Specialist 3rd Shift MCR position is attached hereto as **Exhibit I.**
- o Copies of the candidate detail of the selected applicant for this role and of Complainant are attached hereto as **Group Exhibit J**. There were more than fifty applicants for this position; due to the volume involved, these materials are available on request.

- **Engagement Specialist PT Overnight - MCR** (Location: McHenry)
  - o January 30, 2023: Complainant applied for this position.
  - o January 31, 2023: Rosecrance updated its system to reflect Complainant's application as "Reviewed – Not Selected".
  - o February 22, 2023: Rosecrance hired ▆▆▆▆▆▆▆▆▆▆▆. However, ▆▆▆▆▆▆ did not begin employment and the position remains open to date.
  - o A copy of the job posting for Engagement Specialist PT Overnight MCR position is attached hereto as **Exhibit K.**
  - o Copies of the resumes of all applicants for this role are attached hereto as **Group Exhibit L**:
    - Applicant list (12 applicants – 6 considered[4]) – 1 page
    - Hired: ▆▆▆▆▆▆▆▆ – candidate detail – (1 page)

---

[3] On all Rosecrance emails attached to this position statement as exhibits, at the top of the first page of the printout, the heading ▆▆▆▆▆▆▆ is crossed out because it is not part of the source Rosecrance email. ▆▆▆▆▆▆▆ is the Administrative Assistant of the undersigned and this identifying information automatically imprinted during the printing process in preparation for this position statement.

[4] These six names are shaded on the list.

**5 | Page**
December 1, 2023

- Not selected: ████████████████████████████
- Not selected: ████████████████████████████
- Not selected: ████████████████████████████
- Not selected: ████████████████████████████
- Not selected: Complainant – candidate detail – (4 pages)

- **Part-Time Data Entry Outreach Worker – Projects for Assistance in Transition from Homelessness**
  - April 2, 2023: Complainant applied for this position.
  - April 3, 2023: Rosecrance hired ████████████████████████████ ████████ .
  - A copy of the job posting for "Part-Time Data Entry Outreach Worker – Projects for Assistance in Transition from Homelessness" position is attached hereto as **Exhibit M.**
  - Copies of the candidate detail for the selected applicants for this role and Complainant are attached hereto as **Group Exhibit N.** There were more than fifty applicants for this position; due to the volume involved, these materials are available on request.

- **Engagement Specialist 3rd Shift MCR** (Location: McHenry)
  - June 12, 2023: Complainant applied for this position.
  - June 14, 2023: Rosecrance hired ████████████████████████████ ████████████████████████████
  - A copy of the job posting for Engagement Specialist 3rd Shift MCR position is attached hereto as **Exhibit O.**
  - Copies of the candidate detail for the selected applicant for this role and Complainant are attached hereto as **Group Exhibit P**. There were more than fifty applicants for this position; due to the volume involved, these materials are available on request.

**This case does not involve Discrimination or Retaliation in any form**

As set forth above, Rosecrance employees Maggie Bianchi (Community Based Supervisor – Rosecrance McHenry County) and Tanner Satterlee (Talent Acquisition Specialist) met Complainant via a Video Interview on January 18, 2023.

During the interview, Ms. Bianchi recognized Complainant from previous work within the community in his former role with another agency within the same county. Part of Ms. Bianchi's role as the Community Based Supervisor is to attend community meetings with various behavioral health agencies. Through her involvement with these meetings, Ms. Bianchi became aware of several concerning aspects of Complainant's conduct and lack of professionalism, including but not limited to: stationing himself at local hospital lobbies in order to pull clients for his former employer; driving individuals in his personal vehicle; and allowing clients to spend the night in his private residence if they did not have an alternative place to stay. These behaviors are not condoned by Rosecrance as part of its practice. Many of these actions of Complainant were witnessed and reported to Ms. Bianchi through the Rosecrance Mobile Crisis Team employees who work in conjunction with the Rosecrance Engagement Specialists. Additionally, at the video interview, Complainant inquired as to whether Rosecrance would provide legal advocacy to those we serve through the Rosecrance crisis response as well as whether the Engagement Specialist would be responsible for bringing to light the shortcomings of the current behavioral health system and work to

**6 |** Page
December 1, 2023

enact changes to the system. Ms. Bianchi advised Complainant that these actions were not included in the Engagement Specialist role, which is solely responsible for providing support to the individual utilizing crisis services through the Engagement Specialist's shared experience and encouraging that individual to follow through with the referrals and resources provided to them based on the services the client identified were needed. Due to the aforementioned concerns, Ms. Bianchi elected not to move forward with the application process for Complainant beyond that initial virtual interview. A copy of the signed statement of Ms. Bianchi is attached hereto as **Exhibit Q.**

Ms. Bianchi recalls no disclosure by Complainant regarding disability. Complainant did mention his former struggles with substance abuse, but that is not exclusionary criteria for employment in the Engagement Specialist role, since a requirement for the position is lived experience with the behavioral health system. Ms. Bianchi's impressions and decision not to move forward were based solely on her personal knowledge of how he had conducted himself at his former job and his aggressive nature and lack of boundaries demonstrated during the discussion at the interview.

Ms. Satterlee's impression of Complainant following the interview was similar to that of Ms. Bianchi. Ms. Satterlee is aware that the Engagement Specialists are expected to provide peer support to clients, meaning that these staff possess behavioral health lived experience, having themselves been through behavioral health treatment and/or are in behavioral health recovery (such as recovery from addiction). Staff in peer support roles such as the Engagement Specialists may self-disclose to clients about their behavioral health journey if they are comfortable doing so because this may be helpful to the client. Behavioral health lived experience is recognized as a strength in Rosecrance staff and it is the key qualifier for the Engagement Specialist role. Prior to an interview with the hiring managers, Ms. Satterlee completes a phone screen with all candidates, and did so with Complainant. In the screen for the Engagement Specialist role, Ms. Satterlee screens for lived experience. She does so by explaining the requirement of providing peer support in the Engagement Specialist role, what that means, and she asks candidates to respond back "yes" or "no" if they are qualified by having lived experience and if they are comfortable with self-disclosure to clients. Ms. Satterlee does not inquire into the details of any lived experience of the candidate.

Ms. Satterlee recalls that any personal health disclosure by Complainant in the Video Interview (or the preceding phone screen) was regarding behavioral health which was seen not only as a strength but as a basic minimum qualification for the position of Engagement Specialist. She has no recollection of Complainant disclosing in the interview process that he filed any charges of discrimination against a previous employer.

Ms. Satterlee and Ms. Bianchi discussed Complainant's performance immediately after the interview on January 18, 2023. They discussed concerns each of them had regarding Complainant's ability to maintain professional boundaries with clients in the Engagement Specialist position as this role operates mostly independently and out in the community (as opposed to in an office or fixed site). As boundaries are paramount in all of the client-facing positions within Rosecrance, and especially in the role of Engagement Specialist, they determined that they would not be moving forward with Complainant's application at that time. A copy of Ms. Satterlee's signed statement is attached hereto as **Exhibit R**. A copy of Ms. Satterlee's interview notes page is attached as **Exhibit S**.

There was also absolutely no consideration of any alleged disability or prior charges of discrimination mentioned in any internal communications relating to the application journey within Rosecrance.

**7 |** P a g e
D e c e m b e r 1 , 2 0 2 3

Attached are internal communications among the Rosecrance talent acquisition staff relating to Complainant and his application for employment with Rosecrance:

- **Exhibit T:**   January 4, 2023 correspondence between Complainant and Tanner Satterlee setting up the initial phone screen.
- **Exhibit U:**   January 5, 2023 internal exchange between Kristin Rice, LCSW, LPHA (PI & Staff Education Specialist, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ confirming that Complainant would have the RSA designation.
- **Exhibit V:**   January 11-12, 2023 correspondence between Complainant and Tanner Satterlee setting up the Video Interview for January 16.
- **Exhibit W:**   January 12-16 correspondence between Complainant and Tanner Satterlee regarding the upcoming Video Interview.
- **Exhibit X:**   January 18, 2023 correspondence from Tanner Satterlee to Complainant regarding the upcoming January 18, 2023 Video Interview.
- **Exhibit: Y:**   January 20-27 exchange between Complainant and Tanner Satterlee regarding the disposition of the Engagement Specialist position and the Rosecrance decision to pursue other candidates.
- **Exhibit Z:**   January 23, 2023 message from Complainant to Tanner Satterlee explaining prior drug related arrest issue and participation in a "Fair Housing Case" in Los Angeles.
- **Exhibit AA:**   February 15, 2023 exchange between Complainant and Tanner Satterlee confirming that Rosecrance had not selected Complainant for the Engagement Specialist position.
- 

These materials demonstrate that the consideration of Complainant was routine within the hiring process of Rosecrance. None of the participants in the hiring process held any animus toward Complainant, his disclosed past substance addiction, or had any knowledge of any alleged past charges of discrimination. The only mention by Complainant of prior litigation related to a housing complaint, which was not alleged in the Charge and had nothing to do with Rosecrance's selection of other candidates for the positions where Complainant submitted his application (See **Exhibit Z,** the January 23 email from Complainant).

**Conclusion**

The facts and documentary evidence in this case objectively demonstrate that no discrimination or retaliation occurred in this case. Rosecrance determined for legitimate nondiscriminatory reasons that Complainant was not suitable for the Engagement Specialist position for which he applied, specifically, that he had a demonstrated lack of boundaries with clients, which is a disqualifying trait for the Engagement Specialist.

We submit that the facts and the documentary evidence provided herein confirm that the Charge is devoid of merit and should be dismissed in its entirety, with prejudice. We ask that you so determine.

**8** | P a g e
D e c e m b e r  1 ,  2 0 2 3

Should you have additional questions or require any further documentation to come to your conclusion, please contact me.  Thank you.

Very truly yours,

Lechtenberg & Associates LLC

Penelope M. Lechtenberg, JD
779-210-2940, ext. 1
pml@lechtenberglawfirm.com

PML:ms

Enclosures

cc:     Ms. Kristin Elliot
         Kelly Epperson, J.D.

**9** | P a g e
D e c e m b e r   1 ,   2 0 2 3

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing Position Statement was served upon:


U.S. Equal Employment Opportunity Commission
Chicago District Office
230 S. Dearborn, Suite 1866
Chicago, IL 60604



By electronically filing same with the EEOC's secure online system:  https://nxg.eeoc.gov/rsp/login.jsf, on
the 1st day of December, 2023.



Penelope M. Lechtenberg, JD
Lechtenberg & Associates LLC

"B"

Dec. 16, 2024

U.S. Equal Employment Opportunity Commission (EEOC)
Chicago District Office
230 S. Dearborn                              *via electronic filing EEOC Portal*
Chicago, IL 60604

RE:     **CLAIMANT REBUTTAL TO RESPONDENT POSITION STATEMENT**
        **Lous Rafti (Claimant) and Rosecrance Inc. (Respondent)**
        **Charge No. 440-2023-08434**

## COMPLAINT

I applied for the position of Engagement Specialist with Respondent in or around January 2023. During my interview, I disclosed my disability and that I filed a charge of discrimination against my previous employer. Subsequently, I was not selected for the position. I applied for additional positions with Respondent and have not been selected for an interview and/or employment.

I believe that I have been discriminated against because of my disability, and in retaliation for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended.

### Claimant's Reply to Respondent's Position Statement (*see* 2023-12-19 Redacted R PS 440-2023-08434.pdf ) incorporated by reference.

2) Rosecrance's denial of my allegation that "During my interview, I disclosed my disability and that I filed a charge of discrimination against my previous employer" is false.

In support of claimant's assertion that he disclosed both his disability and filing of an EEOC Complaint against his previous employer, please consider the following:

• As Rosecrance admits (*see* Position Statement Page 6 Par. 2) having a disability is a requirement for the position of 3rd Shift Engagement Specialist position that I applied and interviewed for,

• During the interview, I disclosed to Maggie Bianchi, as I had disclosed to Tanner Satterlee in phone conversations before the interview, that I am a person living with mental and physical disabilities, have passion for assisting other persons similarly situated, and that filed an EEOC Complaint against my previous employer  New Directions for associational disability discrimination and retaliation.

I also disclosed during the interview that:

- I had significant (6 yrs.) of experience in crisis intervention working with mentally ill, homeless persons, with substance or alcohol use disorder on Los Angeles Skid Row.

- That I had nearly 15 years of experience in crisis intervention working with persons with HIV / AIDS and the LGBTQ+ community, including outreach to HIV + Transgender prostitutes.

- That I had served as a representative for the Los Angeles County Health Dept. HIV / AIDS Drug and Alcohol Task Force in Washington D.C. for purposes of communicating with appointed and elected representatives about funding.

- That I had nearly seven years of experience in crisis prevention and intervention representing similarly situated mentally ill, homeless persons, with substance or alcohol use disorder persons at Public Interest Law organizations and was often responsible for similar clients of other attorneys. Many of these cases involved important impact litigation, larger private law firms working with us pro bono, or City, County, or State Attorney's offices.

- That I was very proud of my recent work as an Alcohol and Substance Use Disorder treatment navigator with New Directions Addiction Recovery Services NDARS), especially the positive outcomes for our clients. Especially that I was able to increase the number of persons assisted from an average of six per month, to over thirty, developed a comprehensive network of Detox and treatment referral resources, and revised, improved and expanded reporting.


## Claimant's Responses to Rosecrance's "Denial of Discrimination or Retaliation in any form" (see Position Stmt Page 5)

Rosecrance's statement that *"actions of Complainant were witnessed and reported to Ms. Bianchi through the Rosecrance Mobile Crisis Team employees who work in conjunction with the Rosecrance Engagement Specialists."* (see Position Smt. Page 5) Is not only blatantly false, but it is also physically impossible for those persons - or, anyone - to have witnessed, considering that I worked remotely via phone and computer in all of my interactions with clients.

I never stationed myself in any Hospital ER lobby to recruit clients, I worked and interacted with clients and Hospital ERs almost entirely via telephone.

I never transported clients in my own vehicle, my previous employer had a transportation service - Kaisen - via which I submitted all requests for transportation online. Clients were then transported via UBER to hospitals, rehabilitation programs, sober living, etc. Please note that I interacted extensively with Rosecrance staff over the phone when arranging transportation to one of their facilities, especially to their

Mental Health Crisis Center where it was imperative to closely coordinate the arrival of clients in psychiatric crisis to make sure that they were met as the UBER arrived there.

I never allowed or invited clients to stay in my home. I am proud to say that I always found homeless clients a placement.

Nor did I ever use the word "advocacy" during the interview. Comments I made during the interview, described as "advocacy" were directly related to how Rosecrance dealt with disability discrimination by other agencies, e.g., whether Rosecrance had a process for reporting such incidents. Maggie Bianchi's response was a resolute "no." She also said that such matters were beyond the scope of employment for the position. It was at this point that the tone of the interview changed. She quickly concluded our meeting and very cooly thanked me for my interest in Rosecrance.


## CONCLUSION

Particularly revealing are Rosecrance's use of the terms "Lack of Boundaries" and "Lack of Professionalism" in their denial of discrimination. Not only are these terms entirely subjective, but are also precisely the same pre-textual terms that New Directions used to describe my reporting of unlawful disability discrimination to EEOC, Ill Dept. of Civil Rights and State Attorney's Office, to attempt to refute their primary discriminatory motives and intent.

Rosecrace's use of the word "advocacy" to describe my work on behalf of disabled clients, is the same, or very similar to the terms used by New Directions to describe my work on behalf disabled clients, in response to both my EEOC Complaint and IDES Appeal for unemployment benefits. In the latter matter, the hearing found that I was not terminated for cause and therefore awarded unemployment benefits; in the former, EEOC provided an "OK to sue" letter.

Prior to my January 18, 2023 interview, Rosecrance HR Rep Tanner Satterlee was very optimistic about my application (*see* eMail Jan. 4, 2023, 440-2023-08434+Exhibit+1). She contacted me and offered me the job contingent on my interview with Maggie Bianchi (*see* eMail Jan. 11, 2023, 440-2023-08434+Exhibit+2)

Despite this offer, my qualifications and experience for the position) I applied for, after I disclosed my disability and that I had filed an EEOC Complaint against my previous employer for disability discrimination, Rosecrance did not hire me, or even consider me for any of the other positions that I subsequently applied. (*see* Position Statement Pages 4- 5)

I am informed and believe that Rosecrance hired a much less experienced and less qualified or experienced non-disabled person or persons for the position of

Engagement Specialist 3rd Shift MCR that I applied for. (*see* <u>Position Statement Pages 4-5</u>)

I am informed and believe that Rosecrance subsequently hired much less qualified or experienced non-disabled person or persons for other position(s) that I applied for. (*see* Position Statement Page 4-5)

For these reasons, Claimant respectfully asserts that Rosecrance's denials of discrimination or retaliation are false, unsupported or pre-textual. In consideration of the above, Respondent's Position Statement supports his Charge of Disability Discrimination and Retaliation, as well as amendment for an additional charge of Associational Disability Discrimination.

Sincerely,

<u>/s/ Louis A. Rafti</u>

Claimant Charge 440-2023-08434
1124 Wheeler Street
Woodstock, IL 60098
Tel: (815) 307-6326



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Chicago District Office
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/03/2024

**To:** Mr. Louis A. Rafti
1124 Wheeler Street
WOODSTOCK, IL 60098
Charge No: 440-2023-08434

EEOC Representative and email:     SETH BROWN
Investigator
seth.brown@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 440-2023-08434.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
06/03/2024

Amrith Kaur Aakre
District Director

**Cc:**
Kristin  Hamblock
Rosecrance Health Network
4501 PRIME PKWY
MCHENRY, IL 60050

Dave Gomel
Rosecrance
2704 N Main St
Rockford, IL 61103

Christopher Drucejones
Rosecrance Inc.
605 Mulberry St
Rockford, IL 61103

Penelope Lechtenberg
Lechtenberg & Associates LLC
1235 N MULFORD RD STE 208
Rockford, IL 61107

Please retain this notice for your records.